IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ENOBONG W. BASSEY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. H-11-3986 |
| | § | |
| ZIMAC CARE CENTER, INC., | § | |
| NKEONYEASUA OKOLIE, | § | |
| | § | |
| Defendants. | § | |

<u>**MEMORANDUM OPINION**</u>

Pending before the court[1] is Defendant Zimac Care Center Inc.'s Motion for Summary Judgment (Doc. 32) and the response thereto.  For the reasons stated below, the motion is **GRANTED IN PART, DENIED IN PART**.

## I.  Case Background

Plaintiff filed this action against Zimac Care Center, Inc., ("Zimac" or "Defendant"), alleging sex discrimination and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-5, and unpaid overtime under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, et seq.  Plaintiff also alleged state law claims of fraud, intentional infliction of emotional distress ("IIED"), negligent hiring, supervision,

---

[1]    On February 17, 2012, the parties consented to proceed before the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c).  <u>See</u> Doc. 14, Consent to Proceed.  At that time, Defendant Nkeonyeasua Okolie ("Okolie") was an unserved defendant.  Plaintiff later obtained service on Okolie and moved for a default judgment.  <u>See</u> Docs. 17, 31, Pl.'s Mots. for Entry of Default. Plaintiff's second motion for entry of default was granted, and the transfer to the undersigned pursuant to 28 U.S.C. § 636(c) was reaffirmed.  <u>See</u> Doc. 38, Ord. Adopting Mem. & Recommendation & Entry of Default.

training and retention and respondeat superior liability for claims of assault and battery and slander allegedly committed by a Zimac supervisor, Defendant Nkeonyeasua Okolie ("Okolie").

Presently before the court is Zimac's motion for summary judgment.   In support of Zimac's motion are several documents, authenticated as business records by Lucius Akuchie ("Akuchie"), the chief operating officer of Zimac.[2]  Akuchie also avers that he has personal knowledge of the events outlined in those documents.

Plaintiff objects to several of these documents.[3]  The court will address those evidentiary issues in the context of the legal issues, to the extent necessary.   However, the court cannot consider the pending motion without first commenting on the paucity of admissible evidence before the court, both in support and in opposition, to the motion.   According, the court distills the following recitation of facts from the authenticated summary judgment evidence and those allegations that appear to be undisputed.   See Fed. R. Civ. P. 56(c).

Plaintiff began his employment with Zimac, a home and community-based health-care-services agency, as a direct-care

[2]   See Doc. 35-1, Ex. A to Suppl. to Def.'s Mot. for Summ. J., Aff. of Akuchie pp. 1-5.

[3]   See Doc. 36, Pl.'s Resp. to Def.'s Mot. for Summ. J. ("Pl.'s Resp.") p. 14.

worker in December 2008.[4]  He was paid eight dollars an hour.[5]  At some point during his employment tenure, Plaintiff received a generally favorable performance evaluation.[6]

On April 13, 2009, Akuchie drafted and signed a "Letter of First Verbal Warning" addressed to Plaintiff.[7]  That letter recounted that on April 13, 2009, Plaintiff had an argument with an employee of Imar Enterprises, a company that contracted with Zimac for patient-care services, and refused to apologize to the Imar employee.[8]  The warning letter also stated that Plaintiff refused to follow his supervisor's directions on proper patient care by talking to patients while they were eating lunch and by talking on the phone while on duty.[9]  The letter reflected that Plaintiff was "in serviced" on the importance of following instructions.[10]

---

[4]    See Doc. 36, Pl.'s Resp. p. 3; see also Doc. 36, Ex. E to Pl.'s Resp., Payroll Record p. 25.

[5]    See id.

[6]    It is unclear to the court when this performance appraisal occurred. It was dated and signed October 1, 2008, but purports to review Plaintiff's performance from October 1, 2008, through October 1, 2009.  As it appears undisputed that Plaintiff's term of employment ran from December 2008 through August 2009, the dates on the document do not appear to be correct.  Plaintiff authenticated the document as a copy of the original document, but neither party provides any further explanation.  See Doc. 36, Ex. D to Pl.'s Resp., Aff. of Bassey, p. 1.

[7]    See Doc. 35-1, Ex. A to Suppl. to Def.'s Mot. for Summ J., Aff. of Akuchie p. 2.

[8]    Doc. 32-1, List of Exs., Ex. 2, Letter Dated Apr. 13, 2009.

[9]    Id.

[10]    Id.

Plaintiff denies receiving this letter.[11]

In a memo dated May 2009, Imar Enterprises again complained to Zimac about Plaintiff's on-the-job behavior.[12] The memo stated that Mrs. Imar found Plaintiff to be rude and unprofessional.[13] The letter further recounted that Plaintiff appeared to be disinterested in following directions and, at one point, handed Mrs. Imar a paper on which he had written that she should not talk to him, rather, she should talk to his supervisor.[14] As Mrs. Imar was the manager of the facility, she objected to his refusal to talk with her directly.[15] The letter also complained that Plaintiff had refused to communicate information about a patient to either Mrs. Imar or other members of her staff and Plaintiff had been observed yelling at patients.[16] Mrs. Imar requested that Zimac remove Plaintiff from working with her patients.[17]

As a result of that letter, on May 12, 2009, Akuchie drafted and signed a second letter of warning.[18] In the letter, Akuchie stated that Plaintiff failed to carry out instructions from his

---

[11]    See Doc. 36, Ex. A to Pl.'s Resp., Aff. of E. Bassey p. 2.

[12]    See Doc. 32-1, List of Exs., Ex. 3, Memo Dated May 2009.

[13]    Id.

[14]    Id.

[15]    Id.

[16]    See id.

[17]    Id.

[18]    See Doc. 32-1, List of Exs., Ex. 4, Letter of 2nd Verbal Warning.

supervisor when he talked on the phone while at work, threatened a patient's mother, refused to apologize for his disrespectful behavior and left work without notifying his supervisor.[19]  As with the previous warning letter, the letter concluded:  "Mr. Bassey was in serviced on the importance of following instructions from his supervisor."[20]   Plaintiff denies receiving this letter and also denies the substance of the complaints about his conduct.[21]

On July 23, 2009, Akuchie drafted and signed a final letter of warning.[22]  The letter recounted that Plaintiff had refused to carry out instructions from his supervisor on three occasions.[23] Plaintiff was again reminded that he was not to talk on the phone while at work, he was not to be rude and disrespectful to patients' parents, he was not to make sexual comments to other staff members and he was not to talk to patients while they were eating.[24]   The letter concluded with a notation that Plaintiff was counseled about the importance of following instructions and that any further incident would result in termination.[25]  Plaintiff admits receiving this letter, which he refused to sign because he claimed he had not

---

[19]   Id.

[20]   Id.

[21]   See Doc. 36, Ex. A to Pl.'s Resp., Aff. of E. Bassey p. 1.

[22]   See Doc. 32-1, List of Exs., Ex. 5, Letter of Final Verbal Warning.

[23]   Id.

[24]   Id.

[25]   See id.

been verbally warned before that time.[26]

Following receipt of the final warning letter, Plaintiff contacted an attorney.[27]   On July 27, 2009, the attorney, Anne Gbenjo, wrote a letter to Zimac in which she outlined Plaintiff's complaints about how he was treated by his female co-workers.[28] Gbenjo stated that Plaintiff had been "consistently and perhaps relentlessly harassed" by a co-worker, Okolie, that Plaintiff had complained about Okolie's behavior to Akuchie on at least three prior occasions, and Akuchie had taken no corrective action.[29] Gbenjo stated that Okolie had "almost hit" Plaintiff in the face with a broom during the prior week and two witnesses had corroborated Okolie's harassment of Plaintiff.[30]   Gbenjo informed Akuchie that her client believed he was the victim of discrimination.[31]

Supporting his opposition to summary judgment, Plaintiff averred that he was "constantly taunted by the female staffs."[32] Plaintiff also averred that as a result of his complaints of taunting, a female staff member, Marolayo Olayande, received a

---

[26]   <u>See</u> Doc. 36, Ex. A to Pl.'s Resp., Aff. of E. Bassey pp. 1, 3.

[27]   <u>See</u> Doc. 32-1, List of Exs., Ex. 6, Letter Dated July 27, 2009.

[28]   <u>Id.</u>

[29]   <u>Id.</u>

[30]   <u>See id.</u>

[31]   <u>Id.</u>

[32]   <u>See</u> Doc. 36, Ex. A to Pl.'s Resp., Aff. of E. Bassey, p. 3.

written warning.[33]

In his affidavit, Plaintiff averred that he was not paid overtime for the hours worked over forty per week and, in support, attached pay stubs showing that, on the occasions when he worked in excess of eighty hours in a two-week period, he was paid straight-time for all hours.[34]

On August 7, 2009, Plaintiff's employment was terminated on the grounds of insubordination.[35]  On September 11, 2009, Plaintiff filed a charge of sex discrimination and retaliation with the Equal Employment Opportunity Commission (EEOC).[36]  On August 31, 2011, the EEOC issued a right-to-sue letter to Plaintiff.[37]  Plaintiff timely filed this suit on November 14, 2011.  On January 31, 2014, Zimac filed the pending motion for summary judgment.  Discovery has closed and the matter is ripe for determination.

## II.  Summary Judgment Standard

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R.

---

[33]    Id.

[34]    Id.; see also Doc. 36, Ex. G to Pl.'s Resp., Pay Stubs.

[35]    See Doc. 32-1, List of Exs., Ex. 8, Letter of Termination Dated Aug. 7, 2009.

[36]    See Doc. 32-1, List of Exs., Ex. 9, Charge of Discrimination p. 2.

[37]    See Doc. 32-2, List of Exs., Ex. 11, Dismissal and Notice of Rights Letter Dated Aug. 31, 2011.

Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986); <u>Brown v. City of Houston, Tex.</u>, 337 F.3d 539, 540-41 (5th Cir. 2003). A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>Ameristar Jet Charter, Inc. v. Signal Composites, Inc.</u>, 271 F.3d 624, 626 (5th Cir. 2001). To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party. <u>Anderson</u>, 477 U.S. at 250; <u>TIG Ins. Co. v. Sedgwick James of Wash.</u>, 276 F.3d 754, 759 (5th Cir. 2002).

The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues. <u>Celotex Corp.</u>, 477 U.S. at 323; <u>Topalian v. Ehrman</u>, 954 F.2d 1125, 1131 (5th Cir. 1992). If the moving party can show an absence of record evidence in support of one or more elements of the case for which the nonmoving party bears the burden, the movant will be entitled to summary judgment. <u>Celotex Corp.</u>, 477 U.S. at 322. In response to a showing of lack of evidence, the party opposing summary judgment must go beyond the pleadings and proffer evidence that establishes each of the challenged elements of the case, demonstrating that genuine issues of material fact do exist that

8

must be resolved at trial.  Id. at 324.

When considering the evidence, "[d]oubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party." Evans v. City of Houston, 246 F.3d 344, 348 (5th Cir. 2001); see also Boston Old Colony Ins. Co. v. Tiner Assocs. Inc., 288 F.3d 222, 227 (5th Cir. 2002).  The court should not "weigh evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence." Honore v. Douglas, 833 F.2d 565, 567 (5th Cir. 1987).

However, the nonmoving party must show more than "some metaphysical doubt as to the material facts." Meinecke v. H & R Block of Houston, 66 F.3d 77, 81 (5th Cir. 1995).  Conclusory allegations, unsubstantiated assertions, improbable inferences, unsupported speculation, or only a scintilla of evidence will not carry this burden.  Brown, 337 F.3d at 541; Ramsey v. Henderson, 286 F.3d 264, 269 (5th Cir. 2002).  The court must grant summary judgment if, after an adequate period of discovery, the nonmovant fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322.

### III.  Analysis

Zimac moves for summary judgment on Plaintiff's Title VII claim, arguing first that it is not an employer subject to Title

9

VII and, alternatively, that Plaintiff has no evidence of either sex discrimination or retaliation. Zimac further contends that, as a tax-exempt charitable organization, it is not subject to the Fair Labor Standards Act. Zimac argues that, as Plaintiff is unable to state claims for relief under federal law, his state law causes of action should be dismissed. Alternatively, Zimac addresses the merits of Plaintiff's state law claims. The court first considers Plaintiff's federal claims.

**A. Title VII**

In order to be subject to Title VII, an employer must have at least fifteen employees "for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." 42 U.S.C. § 2000e(b); <u>Juino v. Livingston Parish Fire Dist.</u>, 717 F.3d 431, 434 (5th Cir. 2013)(same). Zimac argues that it is not subject to Title VII because during the time of Plaintiff's employment, it employed only eight individuals.[38]

In response, Plaintiff attaches a Zimac payroll record for the last two-week pay period of 2008, which he avers is a true copy of the original.[39] That document shows Plaintiff's name as [presumably] the fourteenth employee on the list; the other names

---

[38]    <u>See</u> Doc. 32-1, List of Exs., Ex. 1 to Def.'s Mot. for Summ. J., List of Zimac Employees. This exhibit was authenticated by Akuchie. <u>See</u> Doc. 35-1, Ex. A to Def.'s Supplement to Mot. for Summ. J. p. 2.

[39]    <u>See</u> Doc. 36, Ex. D to Pl.'s Resp., Aff. of E. Bassey; Doc. 36, Ex. E. to Pl.'s Resp., Zimac's Resps. & Objs. to Pl.'s Reqs. for Prod. & Interrogs. p. 25.

are blacked out.  Plaintiff offers no other evidence concerning the number of employees employed by Zimac during either 2008 or 2009.

The Supreme Court has stated, "[T]he threshold number of employees for application of Title VII is an element of a plaintiff's claim for relief, not a jurisdictional issue." Arbaugh v. Y & H Corp., 546 U.S. 500, 516 (2006).  Crediting Plaintiff's evidence, as the court must, Plaintiff fails to meet his burden of raising a fact question on whether Zimac employed more than fifteen employees for the requisite twenty workweeks in either 2008 or 2009.  Based on the evidence before it, the court finds that Zimac is not subject to Title VII for those years.  Zimac's motion for summary judgment on Plaintiff's Title VII claims is **GRANTED**.[40]

### 2.  FLSA

The FLSA provides that "no employer shall employ any of his employees who in any workweek . . . is employed in an enterprise engaged in commerce . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of [forty hours] at a rate not less than one and one-half times the regular rate at which he is employed."  29 U.S.C. § 207(a)(1).

The FLSA defines an enterprise engaged in commerce as an

---

[40]   Based on this determination, the court does not reach Zimac's alternative argument that Plaintiff has failed to state claims of discrimination and retaliation under Bell Atlantic v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 556 U.S. 662 (2009).  See Doc. 32, Def.'s Mot. for Summ. J. pp. 16-17

enterprise that "has employees engaged in commerce . . . and is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 . . . ." 29 U.S.C. § 203(s)(1)(A)(i), (ii).  The definition also includes "the operation of a hospital, an institution primarily engaged in the care of the . . . mentally ill or defective who reside on the premises of such institution, a school for mentally . . . handicapped . . . children," or is "an activity of a public agency."  29 U.S.C. § 203(s)(1)(B), (C).

Zimac challenges the law's applicability, arguing that it is not an "enterprise engaged in commerce."  Citing no case law, Zimac contends that it is a "public charity" and not engaged in commerce or the production of goods for commerce.[41]  Zimac makes no averment about the amount of its annual revenue or whether it conducted the work of a public agency during the years in question.  In response, Plaintiff argues, without legal or factual support, that Zimac was an enterprise engaged in commerce and that he was employed as direct care staff for mentally challenged patients.

Whether or not an employer is an enterprise engaged in commerce is a nuanced determination based on both facts and law. Neither party has briefed the law in this area and each makes only the most conclusory of arguments.  Without case law in support, Zimac has not established that, as a public charity, it is not subject to the FLSA.

---

[41]     Doc. 32, Def.'s Mot. for Summ. J. p. 15.

On the other hand, it is worth noting that at trial, Plaintiff will bear the burden of establishing that Zimac was subject to the FLSA during 2008 and 2009.  Wilson v. K & K Best Care Ambulance Svs., Inc., No. 4:13-CV-2509, 2014 WL 1761227, at *1 (S.D. Tex. Apr. 28, 2014)(slip copy); Brown v. Constant Care, Inc., No.5:04-CV-165, 2004 WL 1836732, at *2 (N.D. Tex. Aug. 17, 2004)(unpublished).  This will require Plaintiff to elicit evidence that he or his employer either engaged in interstate commerce, engaged in the activity of a public agency, or engaged in the care of mentally challenged individuals who resided on the premises. See 29 U.S.C. § 203(s)(1)(A), (B), (C); see also Martin v. Bedell, 955 F.2d 1029, 1032 (5th Cir. 1992)(either individual or enterprise coverage is sufficient to invoke FLSA protection).

Based on the absence of factual or legal support, Zimac's motion for summary judgment on Plaintiff's FLSA claim is **DENIED**.[42]

### 3.  Assault and Battery/Respondeat Superior

Zimac moves for summary judgment on Plaintiff's assault and battery claim on the ground that "Plaintiff has offered no evidence to support this allegation other than to state that Okolie swung a broom at him.  It is instructive here that Okolie denied that this

---

[42]   Defendant, anticipating the grant of summary judgment in its favor on Plaintiff's Title VII and FLSA claims, moved to dismiss Plaintiff's state law claims for lack of jurisdiction.  See id. p. 18.  As the court has determined that Plaintiff's FLSA claim may proceed to trial, the court need not consider whether to decline supplemental jurisdiction over Plaintiff's state law claims. See 28 U.S.C. § 1367(c)(3).

happened."[43]   Zimac also complains that Plaintiff failed to allege that he suffered bodily injury from the alleged assault and that he has no evidence that Zimac either authorized or ratified Okolie's conduct.[44]   In support of his claim, Plaintiff avers that Okolie lifted a broom to hit him, and he blocked the blow with his elbow.[45]

Texas courts have recognized that the elements of civil and criminal assault are the same.  Waffle House, Inc. v. Williams, 313 S.W.3d 796, 801 n. 4 (Tex. 2010); Forbes v. Lanzl, 9 S.W.3d 895, 900 (Tex. App. - Austin 2000, pet. denied); Hogenson v. Williams, 542 S.W.2d 456, 458 (Tex. Civ. App. - Texarkana 1976, no writ).  In a recent Texas Supreme Court case, the court discussed the melding of the common law elements of assault and battery into the present Penal Code, in the context of an excessive force allegation.  See City of Watauga v. Gordon, ___ S.W.3d ___, 2014 WL 2535995, at *3 (Tex. June 6, 2014).  The Penal Code provides that a person commits an assault if the person either:

> (1) intentionally, knowingly, or recklessly causes bodily injury to another . . .
>
> (2) intentionally or knowingly threatens another with imminent bodily injury . . . or
>
> (3) intentionally or knowingly causes physical contact with another when he or she knows or should reasonably believe that the other will regard the contact as offensive or provocative.

---

[43]   Doc. 32, Def.'s Mot. for Summ. J. p. 20.

[44]   Id.

[45]   See Doc. 36, Ex. A to Pl.'s Resp., Aff. of E. Bassey p. 2.

14

Tex. Pen. Code § 22.01(a).

The Texas Supreme Court found that the second definition was consistent with the traditional notion of a common-law assault and the first and third definitions were consistent with a common-law battery. <u>Gordon</u>, 2014 WL 2535995, at *3. In <u>Fisher v. Carrousel Motor Hotel, Inc.</u>, 424 S.W.2d 627, 628-29 (Tex. 1967), a motel manager refused to serve a black man who stood in line for a buffet, snatching the plate from his hands. <u>Id.</u> The court found the motel manager's conduct to be actionable as a battery because of the offensive nature of the contact. <u>Id.</u> at 630. The court stated, "Personal indignity is the essence of an action for battery; and consequently the defendant is liable not only for contacts with no actual physical harm, but also for those which are offensive and insulting." <u>Id.</u>

Plaintiff's affidavit testimony that Okolie attempted to swat him with a broom and that he deflected the blow with his elbow could satisfy either the second or third definition of assault and batter without the need to prove bodily injury. Thus, Zimac's first argument that there is no evidence of an assault or battery is without merit.

Under Texas law, an employer may be held liable for the intentional tort of an employee under two alternative theories: respondeat superior and ratification. <u>Skidmore v. Precision Printing & Packaging, Inc.</u>, 188 F.3d 606, 614 (5th Cir. 1999). In

order to impose liability under the doctrine of respondeat superior, Plaintiff must show: (1) an agency relationship existed between the Zimac and Okolie; (2) Okolie committed a tort; and (3) the tort was in the course and scope of Okolie's authority. Ogunbanjo v. Don McGill of West Houston, Ltd., Case No. 01-13-406-CV, 2014 WL 298037, at *3 (Tex. App. - Houston [1st Dist.] Jan. 28, 2014)(no pet.)(citing Zarzana v. Ashley, 218 S.W.3d 152, 159 (Tex. App. - Houston [14th Dist.] 2007, pet. struck)).

In order to show that Okolie acted within the course and scope of her employment, Plaintiff must show that the conduct occurred (1) within Okolie's general authority; (2) in furtherance of Zimac's business; and (3) for the accomplishment of the object for which Okolie was employed. Zarzana, 218 S.W.3d at 159.

Generally, assaultive conduct is not within the course and scope of an employee's authority unless the employer places the employee in a position that involves the use of force. Knight v. City Streets, L.L.C., 167 S.W.3d 580, 583 (Tex. App. - Houston [14th Dist.] 2005, no pet.).

There is no evidence in the record that suggests that Okolie was authorized to use force in any aspect of her employment. Celotex Corp. counsels that the party opposing a "no evidence" summary judgment must go beyond the pleadings and proffer evidence that establishes each of the challenged elements of the case. Celotex Corp., 477 U.S. at 324. Plaintiff has failed to meet his

16

burden on this claim.  Zimac's motion for summary judgment on the issue of respondeat superior liability for Okolie's alleged assault and battery is **GRANTED**.

Turning to Plaintiff's alternative theory of liability, ratification, Zimac may be liable for Okolie's assault if it approved of the act after it occurred.  See Shearson Lehman Hutton, Inc. v. Tucker, 806 S.W.2d 914, 925 (Tex. App. - Corpus Christi 1991, writ dism'd w.o.j.)(holding that a principal who ratifies his agent's act is directly culpable).  It is not enough that Zimac retained Okolie after the alleged assault because mere retention will not establish ratification.  See Skidmore, 188 F.3d at 615 (citing Durand v. Moore, 879 S.W.2d 196, 203 (Tex. App. - Houston [14th Dist.] 1994, no writ); Prunty v. Ark. Freightways, Inc., 16 F.3d 649, 653-54 (5th Cir. 1994)).  On the other hand, an employer's silence may be evidence of ratification where the employer has all material facts and opts to take no action.  See Sw. Bell Tel. Co. v. Wilson, 768 S.W.2d 755, 764 (Tex. App. - Corpus Christi 1988, writ denied).

Admittedly, the summary judgment evidence on this claim is sparse.  Plaintiff avers that Okolie lifted a broom to hit him and he blocked the blow with his elbow.[46]  Zimac offers a letter from Plaintiff's attorney in which she complains that "Ms. Okolie has consistently and perhaps relentlessly harassed Mr. Bassey," and

---

[46]    Doc. 36, Ex. A to Pl.'s Resp., Aff. of E. Bassey p. 2.

"[S]he almost hit Mr. Bassey in the face with a broom on Thursday last week."[47]   There is no evidence in the record before the court that Zimac took any disciplinary action against Okolie or disassociated itself from Okolie's actions.

Thus, Plaintiff has raised a fact issue that an assault took place and that Zimac was on notice that Plaintiff believed he had been assaulted by a supervisor.  A jury will have to determine if Plaintiff was assaulted, whether Plaintiff suffered a compensable injury from the assault and whether Zimac's conduct amounted to ratification of Okolie's action.   Zimac's motion for summary judgment on the issue of ratification is **DENIED**.

### 4.  Fraud

Zimac moves for summary judgment on Plaintiff's fraud claim, arguing that Plaintiff has no evidence that it defrauded Plaintiff. In support, Zimac points to Plaintiff's complaint wherein Plaintiff merely alleges that Zimac made a false representation to Plaintiff with the intent that Plaintiff rely on the representation.   The complaint's fraud allegation concludes: "Defendant told Plaintiff that he was unable to satisfy his wife sexually, that is why the

---

[47]     Doc. 32-1, Ex. 6 to Def.'s Mot. for Summ. J. p. 1.  In Defendant's motion for summary judgment, it argues that Okolie denied swinging a broom at Plaintiff and cited its response to the Equal Employment Opportunity Commission in support.  Doc. 32, Def.'s Mot. for Summ. J. p. 20.  Okolie's statements in the document are hearsay and cannot be considered by the court.  See Fed. R. Evid. 802.  This is also true of the statements of Zimac's chief executive officer, Dr. Akuchike contained in that document as they are being offered for the truth of the matter asserted.

wife left."[48]   The court assumes that this is the false representation of which Plaintiff complains.

In order to state a claim for fraud, a plaintiff must show: (1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly as a positive assertion; (4) the speaker made the representation with the expectation that the other party would act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury. Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am., 341 S.W.3d 323, 337 (Tex. 2011).

Plaintiff has failed to respond to Zimac's motion for summary judgment on this claim.  Plaintiff must go beyond the pleadings and support his fraud claim with evidence that supports each element of a fraud claim.  As Plaintiff has failed to meet his burden, Zimac's motion for summary judgment on Plaintiff's fraud claim is **GRANTED**.

### 5.  IIED

Zimac moves for summary judgment on Plaintiff's IIED claim, arguing that Plaintiff has no evidence that it engaged in outrageous conduct.  Zimac also contends that Texas law does not allow an IIED claim where the factual basis for such a claim is the same as for another tort claim.

---

[48]    See Doc. 1, Pl.'s Orig. Compl. p. 5.

In order to recover for IIED, Plaintiff must prove that (1) Zimac acted intentionally or recklessly; (2) Zimac's conduct was extreme and outrageous; (3) Zimac's actions caused Plaintiff emotional distress; and (4) the emotional distress suffered by Plaintiff was severe. Randall's Food Markets, Inc. v. Johnson, 891 S.W.2d 640, 644 (Tex. 1995). The Texas Supreme Court has stated that the IIED tort was "judicially created for the limited purpose of allowing recovery in those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has no other recognized theory of redress." Hoffmann-La Roche Inc. v. Zeltwanger, 144 S.W.3d 438, 447 (Tex. 2004).

Plaintiff did not respond to Zimac's motion on this issue and therefore has not met his burden under Federal Rule of Civil Procedure 56(e). The court has reviewed Plaintiff's complaint and the summary judgment record and can find no allegation of either extreme or outrageous conduct or extreme emotional distress as a result of such conduct that would satisfy the second or fourth elements of an IIED action. Zimac's motion for summary judgment on this claim is **GRANTED**.

**6. Negligent Hiring, Supervision, Training and Retention**

Defendant moves for summary judgment on Plaintiff's negligent hiring, supervision, training and retention claim on the ground that Plaintiff has no evidence that there was anything in Okolie's

background that would have caused a reasonable employer not to hire
or retain Okolie.   Defendant also argues that Plaintiff has no
evidence that it negligently supervised or trained Okolie and that
such oversights caused Plaintiff harm.

In a negligent hiring or retention case, a plaintiff must show
that the risk that associated with the hiring, supervision or
retention of a co-worker also proximately caused his injuries.
Fifth Club, Inc. v. Ramirez, 196 S.W.3d 788, 796 (Tex.
2006)(stating "[n]egligence in hiring requires that the employer's
'failure to investigate, screen, or supervise its [employees]
proximately caused the injuries the plaintiffs allege'" (quoting
Doe v. Boys Clubs of Greater Dallas, Inc., 907 S.W.2d 472, 477
(Tex. 1995)).   A plaintiff must also show that an investigation of
the co-worker would have revealed this risk.   Doe, 907 S.W.2d at
477.

An employer who negligently supervises an incompetent employee
may be directly liable to a third party whose injury was
proximately caused by the employee's negligent or intentional act.
Wrenn v. G.A.T.X. Logistics, Inc., 987 S.W.2d 90, 97 (Tex. App. -
Fort Worth 2002, no pet.).   The duty of the employer extends only
to prevent the employee from causing physical harm to a third
party.   Id. (citing Sibley v. Kaiser Found. Health Plan of Texas,
998 S.W.2d 399, 403 (Tex. App. - Texarkana, 1999)).

Plaintiff did not respond to Zimac's motion for summary

judgment on this issue and therefore has not met his burden under Federal Rule of Civil Procedure 56(e).   A review of the summary judgment record supports the determination that no evidence supports this claim.   Zimac's motion for summary judgment on this claim is **GRANTED**.

### 7. Slander

Under the Texas Civil Practice and Remedies Code § 16.002(a), a claim for slander must be brought within one year of the defamatory statement.   Here, Zimac argues that any claim Plaintiff may have for slander is barred by limitations.   In support, Zimac states that it is undisputed that Plaintiff was terminated from his employment in August 2009 and did not file this lawsuit until November 12, 2011.   Thus, any statement made during Plaintiff's employment would fall outside of the limitations period.

Plaintiff failed to respond to Defendant's motion for summary judgment on this claim and has failed to identify an allegedly slanderous statement that occurred within the limitations period.[49] Thus, Plaintiff has not met his burden under Federal Rule of Civil Procedure 56(e).   As the court determines that any statement made by Okolie during Plaintiff's employment is time-barred, the court

---

[49]   Plaintiff's complaint merely alleges that "Okolie made a false statement of fact referring to Plaintiff which imputed a disease against Plaintiff and imputed sexual misconduct against Plaintiff.   This was done with actual malice."   <u>See</u> Doc. 1, Pl.'s Orig. Compl. pp. 6-7.   Based on the other allegations contained in Plaintiff's complaint, the court assumes that Okolie's statement was made during Plaintiff's employment and occurred prior to August 2009.

need not consider Defendant's alternative grounds for judgment on this claim.  Zimac's motion for summary judgment on Plaintiff's slander claim is **GRANTED**.

### 8.  Statutory Attorney's Fees

Zimac seeks attorney's fees from Plaintiff pursuant to Section 38.001 of the Texas Civil Practice and Remedies Code ("Section 38.001").  That section permits the recovery of reasonable attorney's fees if the claim is for "rendered services," or "performed labor," among other claims.  See Tex. Civ. Prac. & Rem. Code. §§ 38.001 (1), (2).  Citing no case law, Zimac simply argues that it is entitled to attorney's fees because it successfully defended against Plaintiff's state law claims and its attorney rendered services or performed labor that achieved that result. Zimac misapprehends the law.

In order to obtain an award of attorney's fees under Section 38.001, "a party must (1) prevail on a cause of action for which attorney's fees are recoverable, and (2) recover damages." Peterson Group, Inc. v. PLTQ Lotus Group, L.P., 417 S.W.3d 46, 60 (Tex. App. - Houston [1st Dist.], 2013)(quoting Green Int'l, Inc. v. Solis, 951 S.W.2d 384, 390 (Tex. 1997)).

Here, Zimac has not shown that attorney's fees are recoverable for claims of intentional infliction of emotional distress, fraud, negligent hiring, supervision, retention and training and slander, and it has asserted no claim for damages.  Zimac is therefore not

23

entitled to an award of attorney's fees pursuant to Section 38.001. See MBM Fin. Corp. v. Woodlands Operating Co. L.P., 292 S.W.3d 660, 666 (Tex. 2009)(denying the ability to recover attorney's fees under Section 38.001 where a party prevailed but failed to recover damages). Zimac's motion for summary judgment on this claim is **DENIED**.

### IV.  Conclusion

The court **GRANTS** Zimac's motion for summary judgment on Plaintiff's Title VII claims for sex discrimination and retaliation, as well as Plaintiff's state law claims for IIED, fraud, negligent hiring, supervision, retention and training, and slander. Zimac's motion for summary judgment is **DENIED** with respect to Plaintiff's FLSA and assault and battery claims and its claim for attorney's fees.

**Docket Call is set for August 8, 2014, at 10:00 a.m. in Courtroom 700.** As this action was filed almost three years ago, no request for a continuance based on a need for additional discovery will be considered by the court.

The Joint Pretrial Order and motions in limine are due August 1, 2014. Plaintiff is responsible for timely filing the complete joint pretrial order. The court will not accept separate versions of the pretrial order.

No instrument filed within seven days of docket call shall be considered. All pending motions may be ruled on at docket call,

and the case will be set for trial.  At trial, the court also will hear damage evidence in connection with the entry of default against Okolie.

SIGNED this <u>11th</u> day of July, 2014.

_____
U.S. MAGISTRATE JUDGE